## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**JOHN C. BUCHANAN, JR.**,

               Plaintiff,

                                       No. 2:12-cv-15511

vs.                             Hon. Gerald E. Rosen

**JAMES W. METZ II** and **DONOVAN MOTLEY**,

               Defendants.

_____/

## OPINION AND ORDER REGARDING PLAINTIFF'S MOTIONS FOR RECONSIDERATION AND FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

### I. INTRODUCTION

On March 3, 2014, this Court dismissed Plaintiff John C. Buchanan Jr.'s claims against Defendant James W. Metz II. *Buchanan v. Metz*, --- F. Supp. 2d ---, 2014 WL 805456, at *19 (E.D. Mich. 2014) (Rosen, C.J.). Presently before the Court are two related motions: (1) Plaintiff's Motion for Reconsideration of Opinion and Order Granting Defendant Metz's Motion to Dismiss (Dkt. # 38); and (2) Plaintiff's Motion for Leave to File Second Amended Complaint (Dkt. # 44). Having reviewed and considered Plaintiff's Motions and supporting briefs,

Defendant's Response to the latter,[1] and the entire record of this matter, the Court has determined that the relevant allegations, facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process. Therefore, the Court will decide these matters "on the briefs." See Eastern District of Michigan Local Rule 7.1(f)(2). The Court's Opinion and Order is set forth below.

## II. DISCUSSION

### A.    Procedural History

Though the parties and the Court are quite familiar with this matter, a brief procedural history will help place Plaintiff's two Motions into context. This action arises out of Plaintiff's failed attempt to redevelop a manufacturing plant outside of Grand Rapids into a film studio as part of Michigan's Film and Digital Media Tax Credit program. He alleges that the project was on track until "politics intervened," which led to a "sham investigation" by the Michigan Attorney General. The investigation, according to Plaintiff, was designed with the ends in mind: a politically-motivated prosecution of Plaintiff and his business partner in order to make the office look tough on fraud in support of then-Attorney General Mike Cox's campaign for governor. The Michigan Attorney General eventually

---

[1] Pursuant to Eastern District of Michigan Local Rule 7.1(h)(2), Metz was not permitted to respond to Plaintiff's Motion for Reconsideration unless this Court ordered otherwise -- which it did not.

filed criminal charges against both individuals on the theory that the redevelopment plan was really just a scheme to bilk the State of Michigan out of millions of dollars of film tax credits.

After a Michigan state court dismissed the criminal charges for want of probable cause, Plaintiff commenced this action against the two individuals responsible for the investigation: Defendant James W. Metz II, an Assistant Attorney General, and Defendant Donovan Motley, an investigator.  His First Amended Complaint raised causes of action under the Fourth Amendment and Michigan common law for malicious prosecution and false arrest, essentially alleging that Metz and Motley decided to pursue charges against him without probable cause and effectuated this by having Motley make false statements to a magistrate.  Metz subsequently moved to dismiss Plaintiff's First Amended Complaint on the grounds that it failed to state a claim under Rule 12(b)(6), or in the alternative, that he enjoyed absolute or qualified immunity.

In granting Metz's Motion, this Court went into some detail about the scope of prosecutorial immunity generally, as well as its application to Plaintiff's First Amended Complaint.  *Id.* at *7-19.  Though this Court found that some of the activities in which Metz engaged were not entitled to absolute immunity, it concluded that Plaintiff's First Amended Complaint did "not state[] any claim to which absolute immunity [did] not apply."  *Id.* at *19.  This was because

3

"Plaintiff's alleged injuries attributable to Metz [arose] out of his prosecution for attempted fraud against the state -- not any investigative misconduct independent of the prosecution." *Id.* at *13. In short, Plaintiff's allegations did not set forth any claims arising out of a constitutionally infirm investigation that were *independent* from his claims arising out of his arrest and subsequent prosecution. *Id.* at *13-19.

Plaintiff's Motions for reconsideration and for leave to amend now seek to revive his claims against Metz. The former argues that he discovered additional facts after briefing that support his initial claims. The latter now adds these new facts as well as recasts some of his claims as ones based on substantive due process and false arrest. The Court addresses each in turn.

**B.      Plaintiff's Motion for Reconsideration**

Eastern District of Michigan Local Rule 7.1(h) governs Plaintiff's Motion for Reconsideration, and provides in relevant part, that:

> Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

L.R. 7.1(h)(3). In order to prevail on a motion for reconsideration therefore, the movant must not only demonstrate a palpable defect by which the Court has been

4

misled, he must also show that a different disposition of the case must result from a correction of that defect. A "palpable defect" is "a defect that is obvious, clear, unmistakable, manifest or plain." *United States v. Lockette,* 328 F. Supp. 2d 682, 684 (E.D. Mich. 2004) (Gadola, J.). A motion that merely presents the same issues already ruled upon by the Court -- either expressly or by reasonable implication -- will not be granted. L.R. 7.1(h)(3); *Flanagan v. Shamo,* 111 F. Supp. 2d 892, 894 (E.D. Mich. 2000) (Rosen, J.). Moreover, "a motion for reconsideration is not an appropriate vehicle for raising new facts or arguments." *United States v. A.F.F.,* 144 F. Supp. 2d 809, 812 (E.D. Mich. 2001) (Lawson, J.). This is because "[l]ike motions under Federal Rule of Civil Procedure 59, motions under Local Rule 7.1(h) 'are aimed at *re* consideration, not initial consideration.'" *Convertino v. U.S. Dep't of Justice*, 2013 WL 6163219, at *1 (E.D. Mich. Nov. 25, 2013) (Cleland, J.) (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 747 (6th Cir. 1998)).

In support of his Motion for Reconsideration, Plaintiff argues that he discovered new facts that support his claim against Metz a little over a month after he submitted his Response to Metz's Motion to Dismiss.[2] On April 29, 2013, Plaintiff deposed the incoming Director of the Michigan Film Office, Carrie Jones,

---

[2] In addition, Plaintiff's Motion for Reconsideration duplicates his request for leave to amend to add substantive due process violations in lieu of the claims this Court has previously dismissed. (Plf's Mtn., Dkt. # 38, at 10). The Court addresses this request with his Motion for Leave to File Second Amended Complaint.

in a state court matter related to the failed redevelopment of the manufacturing plant. (Plf's Mtn., Dkt. # 38, at 2). She testified that the outgoing director, Janet Lockwood, essentially instructed her not to process West Michigan Film's tax credit during the pendency of the Attorney General's investigation. (*Id.* at 3-5). Had Jones finalized the tax credit, Plaintiff argues that he would not have (1) been forced to relinquish his interest in his company pursuant to a separate agreement he had entered into with his father (the other co-owner of his company) and (2) had "his reputation as a developer . . . destroyed." (*Id.* at 9). Therefore, Plaintiff claims that by linking the Film Office's failure to process the tax credit to the Attorney General's investigation, he has shown that "both the investigation and [his] prosecution damaged [him.]" (*Id.* at 2).

The procedural posture of this matter necessitates denying Plaintiff's Motion for Reconsideration. This Court's March 3, 2014 Opinion dismissed Plaintiff's First Amended Complaint on the pleadings pursuant to Federal Rule of Civil Procedure 12(b)(6). That rule "tests the legal sufficiency of [P]laintiff's complaint." *Riddle v. Egensperger*, 266 F.3d 542, 550 (6th Cir. 2001). Plaintiff's instant Motion, however, raises *new* facts -- ones that were not pled in Plaintiff's First Amended Complaint. His Motion is therefore aimed not at *reconsideration,* but instead at *initial consideration*. Accordingly, Plaintiff has not and cannot

demonstrate a palpable defect by which this Court was misled.  Reconsideration is not appropriate.[3]

## C.    Plaintiff's Motion for Leave to File Second Amended Complaint

### 1.    Applicable Standard

"[W]hen a motion to dismiss a complaint is granted, courts typically permit the losing party leave to amend."  *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 698 (6th Cir. 2004), *abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309 (2011).  This practice recognizes that Federal Rule of Civil Procedure 15(a)(2) instructs courts that leave should be "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Such a liberal rule "reject[s] the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept[s] the principle that the purpose of pleading is to facilitate a proper decision on the merits."  *Foman v. Davis,* 371 U.S. 178, 181-82 (1962) (citation omitted).

---

[3] For what it is worth, these additional facts do not solve the absolute immunity and Rule 12(b)(6) issues that this Court previously addressed with respect to Plaintiff's claims in his First Amended Complaint, which "make[s] clear that he is seeking relief as a result of his *prosecution.*"  *Buchanan*, --- F. Supp. 2d ---, 2014 WL 805456, at *19 (emphasis added).  While these additional facts may be relevant to his *new* claim that the investigation torpedoed his business deal and cost him his interest in his company and his reputation, they have no bearing on the facts surrounding the *prosecutorial misconduct* claims that are set forth in the First Amended Complaint.

"Although Federal Rule of Civil Procedure 15(a)(2) provides that a court should freely give leave to amend a complaint when justice so requires, the right to amend is not absolute or automatic." *Tucker v. Middleburg-Legacy Place,* 539 F.3d 545, 551 (6th Cir. 2008) (internal quotation and modification omitted). "In deciding whether to allow an amendment, the court should consider the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Perkins v. Am. Elec. Power Fuel Supply, Inc.,* 246 F.3d 593, 605 (6th Cir. 2001). An amendment is deemed futile if the resulting amended complaint "could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir. 2000). Metz objects to Plaintiff's proposed amendment only on futility grounds. (Defs' Resp., Dkt. # 46).

### 2.    Plaintiff's Proposed Second Amended Complaint

There are just a few differences between Plaintiff's First Amended Complaint and his proposed Second Amended Complaint. With respect to the factual allegations, the proposed Second Amended Complaint adds more details concerning Carrie Jones's testimony referenced above and the effect that the investigation had on Plaintiff's ability to complete the redevelopment deal:

> 81.    As of July 2010, the Michigan Film Office was to get a new Director. The incoming Director testified that the previous

denial did not cancel or deny [West Michigan Film's application for a tax credit], but only the first attempt to show compliance so as to merit the tax credit. She testified that an applicant such as West Michigan Film could try again to satisfy the Office that the Application and Agreement had been fulfilled, and that West Michigan Film and Plaintiff wanted to work with the Michigan Film Office to try again to close the deal.

\* \* \*

92.   The incoming Director of the Film Office testified that once the investigation began, she had to stop talking to West Michigan Film and stop any processing of the tax credit.

\* \* \*

94.   The [Attorney General]'s investigation against Plaintiff continued through the [gubernatorial] election, right through 2010. During this time, it was common knowledge that Plaintiff was under criminal investigation, and Plaintiff was unable to close any development deals while under the cloud of official suspicion. By July 15, 2010, he had also forfeited his interest in the company that owned the building.

\* \* \*

101.   Had the investigation been performed in good faith and in a legitimate attempt to uncover the truth, Plaintiff would have been exonerated, the deal could have been completed, he would not have lost his interest in the building, and his reputation would have been enhanced rather than destroyed. In addition, the prosecution never would have been initiated.

(Ex. 1 to Plf's Mtn., Dkt. # 44-1, at ¶¶ 81, 92, 94, 101).[4]

---

[4] Though Plaintiff's Motion does not reference the change, Plaintiff now also alleges that Metz "appl[ied] for document and investigatory subpoenas; and suppl[ied] false, misleading, and defamatory information to the Attorney General's

The Proposed Second Amended Complaint adds and reorders claims, with only two being pertinent. First, Count I alleges that Metz and Motley's investigation violated (1) the Fourth Amendment's general prescription against arrests without probable cause and (2) the Fifth and Fourteenth Amendment's substantive due process guarantees. (*Id.* at ¶¶ 121-132). More specifically:

> 129. By planning, shaping, and conducting an investigation that ignored the evidence negating probable cause, Defendants, under color of law, violated Plaintiff's Fourth Amendment right to be free of arrest without probable cause, and his Fifth and Fourteenth Amendment rights to due process in the investigation.

(*Id.* at ¶ 129). Count I additionally ties his damages to the investigation:

> 124. Because of the investigation itself, Plaintiff suffered loss of the profit of the deal with West Michigan Film, loss of other pending deals that were to be financed with the profits, loss of his share of the building, loss of the profits he would have made with the rest of the building, loss of his reputation, and loss of his ability to make any other development deals, and mental anguish.

(*Id.* at ¶ 124).

Second, Count II alleges that both Metz and Motely violated the Fourth Amendment by effectuating his arrest without probable cause. (*Id.* at ¶¶ 133-43). As to Metz, Plaintiff asserts that Metz "either falsely advised Mr. Motley that

---

media representative to release to the media so as to falsely tell the public that Plaintiff committed a crime, was dishonest, and was untrustworthy." (Ex. 1 to Plf's Mtn., Dkt. # 44-1, at ¶ 96(g-h)). Plaintiff's proposed Second Amended Complaint does not, however, bring a separate defamation claim.

10

probable cause existed to arrest Plaintiff, or ordered his arrest in the absence of probable cause." (*Id.* at ¶ 134). With respect to Motley, he obtained an arrest warrant "by misleading the issuing authority . . . [by] making false statements and omitting evidencing from the investigatory file that negated probable cause." (*Id.* at ¶ 135).

### 3.    Plaintiff's Count I does not state a claim for relief

Though Plaintiff has couched Count I as one claim, it is really two. First, Count I alleges that Metz and Motley are liable for violating Plaintiff's Fourth Amendment right to be free from arrest without probable cause due to the sham investigation. Second, Count I alleges that Metz and Motley are liable for violating Plaintiff's substantive due process rights under the Fifth and Fourteenth Amendments when their sham investigation resulted in the loss of his business interests in the company he co-owned with his father.

At its core, this litigation involves the allegation of an unlawful arrest and subsequent prosecution -- all for political means. Plaintiff's proposed Count I attempts to merge these causes of action into a separate cause of action arising out of a sham investigation. Under Plaintiff's theory, the Constitution permits a state official to be held liable for participating in a sham investigation that leads to an unlawful arrest and prosecution *separate and distinct from* the Constitutional torts of false arrest and malicious prosecution. In support of this novel theory,

11

Plaintiff relies upon on a myriad of Sixth Circuit and other cases interpreting the scope of absolute and qualified immunity.  *See, e.g., Parsons v. City of Pontiac*, 533 F.3d 492 (6th Cir. 2008); *Harris v. Bornhorst*, 513 F.3d 503 (6th Cir. 2008); *Radvansky v. City of Olmstead Falls*, 395 F.3d 291 (6th Cir. 2005); *Gardenhire v. Schubert*, 205 F.3d 303 (6th Cir. 2000); *Prince v. Hicks*, 198 F.3d 607 (6th Cir. 1999); *Kuehl v. Burtis*, 173 F.3d 646 (8th Cir. 1999).  Whether a state official is entitled to immunity is distinct from whether a plaintiff has alleged a viable cause of action.  Plaintiff's citation to these cases appears to conflate application of qualified immunity -- i.e., was there probable cause to arrest Plaintiff, which in part sometimes requires an examination of what a particular individual knew (and when) as part of his investigation prior to the arrest, *see, e.g., Logsdon v. Hains,* 492 F.3d 334, 343-44 (6th Cir. 2007) -- with whether Plaintiff has stated a cause of action.

As discussed in more detail below, the Court finds Plaintiff's Count I to be futile.  Plaintiff has put forth no authority authorizing a separate cause of action for participating in a sham investigation that is independent from a cause of action arising out of the arrest and subsequent prosecution.  His claims clearly fail within the ambit of the well-recognized actions of false arrest and malicious prosecution claims under the Fourth Amendment, and should remain there.  Plaintiff may not

spin these claims off into a distinct claim in an attempt to work around this Court's prior holding with respect to prosecutorial immunity.

> **a.** **Plaintiff has not stated an independent Fourth Amendment false arrest claim against Defendants for participating in the "sham investigation"**

Plaintiff asks that this Court extend Fourth Amendment jurisprudence to cover a state official's *pre-arrest investigation* independent from an actual arrest. This Court declines. Plaintiff has put forth no authority -- nor could this Court locate any such authority -- holding that an individual may hold a state official liable under 42 U.S.C. § 1983 for violating his Fourth Amendment right to be free from arrest without probable cause solely because that state official's *pre-arrest investigation* was designed to ignore evidence and come to a pre-determined result. Plaintiff argues that "the Sixth Circuit has clearly held that when an investigator . . . conducts a bogus investigation *leading to an arrest without probable cause*, he violates the Fourth and Fourteenth Amendments." (Plf's Reply., Dkt. # 47, at 2) (citing *Radvansky*, *Gardenhire*, and *Prince*, *supra*) (emphasis added). But again, these cases involve the interplay between the existence of probable cause and absolute/qualified immunity, not the viability of an independent cause of action resting on the nature of the investigation alone.

Surely, the manner in which a state official *conducts* an investigation may be relevant to determining whether he had probable cause to effectuate an arrest or

whether he has qualified immunity.   As but one example, the Sixth Circuit in

*Gardenhire* discussed this "duty to investigate:"

> This Court recognizes that an officer does not have to investigate independently every claim of innocence.  *See Baker v. McCollan,* 443 U.S. at 145-56, 99 S.Ct. 2689.  But, this axiom does not suggest that an officer has *no* duty to investigate an alleged crime before making an arrest.  A police officer has probable cause only when he discovers reasonably reliable information that the suspect has committed a crime.  *See Beck,* 379 U.S. at 91, 85 S.Ct. 223.  And, in obtaining such reliable information, an officer cannot look only at the evidence of guilt while ignoring all exculpatory evidence.  Rather, the officer must consider the totality of the circumstances, recognizing both the inculpatory *and* exculpatory evidence, before determining if he has probable cause to make an arrest.  *See Dietrich,* 167 F.3d at 1012. While it is true that "[a] valid arrest based upon then-existing probable cause is not vitiated if the suspect is later found innocent," "[a] suspect's satisfactory explanation of suspicious behavior is certainly a factor which law enforcement officers are entitled to take into consideration in making the determination whether probable cause to arrest exists."  *Criss,* 867 F.2d at 262.

205 F.3d at 318.  The Sixth Circuit has also held that "officers may [not] make

hasty, unsubstantiated arrests with impunity.  Several cases both from this and

other circuits, caution against incomplete, poorly conducted investigations. . . .

[O]fficers, in the process of determining whether probable cause exists, cannot

simply turn a blind eye toward potentially exculpatory evidence known to them in

an effort to pin a crime on someone."  *Ahlers v. Schebil*, 188 F.3d 365, 372 (6th

Cir. 1999).

        But the issue here is not whether Defendants had probable cause sufficient to

defeat a claim of false arrest, either substantively or on immunity grounds.

Instead, it is whether Plaintiff may reframe a traditional Fourth Amendment false arrest claim into a separate cause of action by "pointing to alleged misconduct at the outset of the investigation." *Buchanan*, 2014 WL 805456, at *17 (E.D. Mich. Mar. 3, 2014) (citing *Bianchi v. McQueen*, 917 F. Supp. 2d 822 (N.D. Ill. 2013)). He cannot, as "[i]t was not the mere existence of an investigation that caused Plaintiffs' arrest; testimony before the [magistrate] did that." *Id.*   Plaintiff's protestations about the sufficiency of the investigation as it relates to the Fourth Amendment belongs in his independently pled claims that Defendants violated his right against malicious prosecution and to not be arrested without probable cause -- causes of action that *arise out of his arrest* -- not a newly formed cause of action that is not supported in law.

> **b.   Plaintiff has not stated a substantive due process claim for participating in a "sham investigation"**

"Substantive due process claims may be loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that 'shock the conscience.'" *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (citation omitted).  Plaintiff alleges that he "had a right, under the Fifth and Fourteenth Amendments, to due process in the way the investigation against him was initiated, planned, and executed." (Ex. 1 to Plf's

15

Mtn., Dkt. # 44-1, at ¶ 126).[5]   The Sixth Circuit has not recognized such a claim

and this Court declines to do so here.

The Supreme Court and the Sixth Circuit have made clear that courts are to

narrowly interpret substantive due process claims:

> [W]e have always been reluctant to expand the concept of substantive
> due process because guideposts for responsible decisionmaking in this
> unchartered area are scarce and open-ended.   By extending
> constitutional protection to an asserted right or liberty interest, we, to
> a great extent, place the matter outside the arena of public debate and
> legislative action.   We must therefore exercise the utmost care
> whenever we are asked to break new ground in this field, lest the
> liberty protected by the Due Process Clause be subtly transformed into
> the policy preferences of the members of this Court.

*Bell v. Ohio State Univ.*, 351 F.3d 240, 250 (6th Cir. 2003) (quoting *Washington v.*

*Glucksberg*, 521 U.S. 702, 720-21 (1997)).   "Where a particular Amendment

provides an explicit textual source of constitutional protection against a particular

sort of government behavior, that Amendment, not the more generalized notion of

'substantive due process,' must be the guide for analyzing these claims."   *Albright*

*v. Oliver,* 510 U.S. 266, 273 (1994) (internal quotation omitted); *see also Graham*

---

[5] Though Plaintiff relies on the Due Process Clauses contained within both the
Fifth and Fourteenth Amendments, the Fifth Amendment's Due Process Clause
cannot support a claim against state actors: "The Fourteenth Amendment's Due
Process Clause restricts the activities of the states and their instrumentalities;
whereas the Fifth Amendment's Due Process Clause circumscribes only the
actions of the federal government."   *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873
n.8 (6th Cir. 2000).   "*Ergo*, . . . [Plaintiff]'s citation to the Fifth Amendment Due
Process Clause [is] a nullity, and redundant of [his] invocation of the Fourteenth
Amendment Due Process Clause."   *Id.*

*v. Connor*, 490 U.S. 386, 393-94 (1989). This Court has also previously noted the "clear Sixth Circuit precedent declining to extend the 'shocks the conscience' standard beyond cases involving physical abuse." *Kawecki ex rel. Marlowe v. Cnty. of Macomb*, 2008 WL 205241, at *25 (E.D. Mich. Jan. 24, 2008) (Rosen, J.) (discussing cases).

Here, Plaintiff's allegations clearly do not involve physical force. Additionally, and to the extent his allegations raise the specter of arbitrary behavior, his examples of such conduct -- "planning, shaping, and conducting an investigation that *ignored the evidence negating probable* cause" -- directly implicate the Fourth Amendment's protections against malicious prosecution and arrest without probable cause. *See, e.g., Robertson v. Lucas*, --- F.3d ---, 2014 WL 2198419, at *6 (6th Cir. 2014) (noting the distinction between malicious prosecution claims and false arrest claims under the Fourth Amendment). Plaintiff has not presented any binding authority permitting him to recast his Fourth Amendment malicious prosecution and false arrest claims into a substantive due process claim.

Though neither of the parties' respective briefs discussed the parameters of a substantive due process claim in the context of a criminal investigation, the bulk of the case law from other circuits supports this Court's conclusion that Plaintiff's substantive due process claim fails. *See, e.g, Freeman v. Town of Hudson*, 714

17

F.3d 29, 41 (1st Cir. 2013) (substantive due process claim for pursuing "unsupported criminal charge against [the plaintiff] for personal reasons" was merely "a garden-variety claim of malicious prosecution"); *Alexander v. McKinney*, 692 F.3d 553, 557-58 (7th Cir. 2012) (rejecting substantive due process claim arising out of initial arrest against prosecutor who allegedly manufactured false evidence while performing an investigatory function because plaintiff could not "recast his untimely Fourth Amendment claim . . . by combining it with a state law malicious prosecution claim and simply changing the label of the claim to substantive due process"); *Hernandez v. Terrones*, 397 F. App'x 954, 965-66 (5th Cir. 2010) (holding that while there is "no freestanding, clearly established constitutional right to be free from a reckless investigation," "conducting a reckless investigation could support other claims for violations of established constitutional rights"); *Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2009) ("A plaintiff cannot state a due process claim 'by combining what are essentially claims for false arrest under the Fourth Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendment.'") (citation omitted); *Becker v. Kroll*, 494 F.3d 904, 922-23 (10th Cir. 2007) (declining to extend substantive due process claim to allegation of a "groundless investigation designed to obtain civil penalties" from the plaintiff); *Awabdy v. City of Adelanto,* 368 F.3d 1062, 1069 (9th Cir. 2004) ("[T]he principle

18

that *Albright* establishes is that no substantive due process right exists under the Fourteenth Amendment to be free from prosecution without probable cause").[6]

The Court notes that its own research uncovered case law in the Eighth Circuit indicating that a plaintiff *may* assert a substantive due process claim "based on an inadequate investigation." *See, e.g., Winslow v. Smith,* 696 F.3d 716, 732 (8th Cir. 2012). Under this body of case law, "a plaintiff must show that the defendant officer's 'failure to investigate was intentional or reckless, thereby shocking the conscience.'" *Id.* (citation omitted). This includes coercing or threatening a defendant, purposefully ignoring evidence suggesting innocence, or placing systematic pressure to implicate a defendant in the face of contrary evidence. *Id.* Plaintiff did not raise this line of cases, *see e.g., Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived"), nor did he present any Sixth Circuit authority discussing such cases.

---

[6] Other district courts are also in accord. *See, e.g., Lawrence v. City of St. Paul*, 740 F. Supp. 2d 1026, 1039 (D. Minn. 2010) (declining to find substantive due process claim on basis of "sham investigation" in and of itself); *Goodfellow v. Ahren*, 2014 WL 1248238, at *6 (N.D. Cal. Mar. 26, 2014) ("An inadequate investigation alone does not 'involve[ ] the deprivation of a protected right,' but must implicate "another recognized constitutional right.") (citation omitted); *Snell v. Vill. of Bellville*, 2011 WL 5361120, at *9 (N.D. Ohio Oct. 28, 2011) (a plaintiff does not have a protected property interest in an "error-free criminal investigation"); *Watson v. Grady*, 2010 WL 3835047, at *22-23 (S.D.N.Y. Sept. 30, 2010) (collecting cases).

Moreover, given the discussion above, this Court cannot conclude that the Sixth Circuit would permit such a claim based on the alleged facts here.

Plaintiff's Count I is therefore futile.

### 4.      Plaintiff's Count II States a Claim for Relief

Plaintiff's Proposed Second Amended Complaint clarifies that he wishes to hold Metz (in addition to Motley) liable for false arrest in violation of the Fourth and Fourteenth Amendments.  The Fourth Amendment, as incorporated by the Fourteenth Amendment, provides that "a law enforcement officer may not seize an individual except after establishing probable cause that the individual has committed, or is about to commit, a crime."  *Radvansky*, 496 F.3d at 614 (citation omitted).  Though "[a]n arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest, . . . [a]n officer cannot rely . . . on a facially valid warrant as satisfactory evidence of probable cause 'when evidence exists that a defendant intentionally mislead or intentionally omitted information at a probable cause hearing for an arrest . . . warrant provided that the misleading or omitted information is critical to the finding of probable cause.'"  *Voyticky v. Village of Timberlake,* 412 F.3d 669, 677 & n.4 (6th Cir. 2005); *see also Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010).  Plaintiff has sufficiently stated a cause of action for false arrest against Metz.

There is no doubt that Plaintiff's arrest was effectuated by a warrant issued by a state magistrate. But Plaintiff alleges facts to fit this exception: Metz and Motley orchestrated his arrest by having Motely falsely testify before the magistrate. And as pertinent here to Metz, Plaintiff now alleges without equivocation that Metz "falsely advised Mr. Motley that probable cause existed to arrest Plaintiff, or ordered his arrest in the absence of probable cause." This Court has already determined that Metz is not entitled to absolute immunity for Plaintiff's prior allegation that "upon information and belief, the defendant Metz also may have given advice to the defendant Motley concerning how the investigation that was to be pursued and further gave advice to Motley and others as to the propriety of the arrest of plaintiff." *Buchanan*, --- F. Supp. 2d ---, 2014 WL 805456, at *12 (citing *Prince*, 198 F.3d at 613-15). The same reasoning applies to Plaintiff's similar, but now express allegations.

The Court rejects Defendants' argument that "the damages flowing from [Metz's] advice would be a result of the prosecution that was initiated." (Defs' Resp., Dkt. # 46, at 5). In other words, Defendants argue that Plaintiff's false arrest claim "does not seek relief as a result of the investigation; rather, the claim seeks relief as a result of the prosecution." (*Id.*). Defendants' argument ignores the fact that a claim for false arrest is separate and independent from a claim for malicious prosecution. *Robertson*, --- F.3d ---, 2014 WL 2198419, at *6; *Sykes*,

21

625 F.3d at 305-10.  That Plaintiff cannot bring a claim of malicious prosecution against Metz due to absolute immunity, *Buchanan*, --- F. Supp. 2d ---, 2014 WL 805456, at *19, does not also support dismissal of Plaintiff's claim of false arrest against Metz as alleged in his proposed Second Amended Complaint.[7]

To be sure, Metz may ultimately have qualified immunity for his actions regarding Plaintiff's false arrest claim.  Metz raised such a defense in his original motion to dismiss, but not in his present Response.  He may do so again if he so chooses, but should recognize that "qualified immunity is typically addressed at the summary judgment stage of the case."  *Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 677 (6th Cir. 2001).

In sum, Plaintiff may amend his complaint to add a claim of false arrest against Defendant Metz.

## IV. CONCLUSION

For all of the foregoing reasons,

---

[7] As this Court noted in its prior Opinion, it was not initially clear as to whether Plaintiff brought a false arrest claim against Metz in his First Amended Complaint, but Plaintiff's briefing clarified that he had not.  *Id.* at *5 n.2.  In dicta, this Court reflected that "[e]ven if this were not the case, the Court's conclusion . . . concerning absolute immunity would apply equally to a false arrest claim."  *Id.* Upon reconsideration, and more importantly, Plaintiff's clarification that he is not only seeking to hold Metz liable for false arrest, but also because he wishes to do so based on the express allegations that Metz "falsely advised Mr. Motley that probable cause existed to arrest Plaintiff, or ordered his arrest in the absence of probable cause," Plaintiff may pursue a false arrest cause of action against Metz.

IT IS HEREBY ORDERED that Plaintiff's Motion for Reconsideration of Opinion and Order Granting Defendant Metz's Motion to Dismiss (Dkt. # 38) is DENIED; and

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File Second Amended Complaint (Dkt. # 44) is GRANTED IN PART AND DENIED IN PART.

**IT IS SO ORDERED.**

Dated:  July 15, 2014                    s/Gerald E. Rosen
                                         Chief, Judge, United States District Court


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 15, 2014, by electronic and/or ordinary mail.

                                         s/Julie Owens
                                         Case Manager, (313) 234-5135